We will turn to the last case on the docket this morning, which is nineteen eight zero zero four Bailey versus Twomey. Mr. Robinson. Good afternoon. May it please the court counsel. I'm John Robinson with Robinson Stelting Welch Bramlett out of Jackson, Wyoming. This case involves the issue of whether or not it was clearly established in 2014 that an officer could not fabricate evidence for a probable cause affidavit to support an arrest and subsequent jailing. And in the case of Ms. Bailey, my client, she spent several months in jail awaiting a trial in which she was acquitted. And to look at the complaint, the First Amendment. Get rid of one issue first. Your fair trial claim. That's not going anywhere, is it? I agree with you, Your Honor. So we should affirm on that. Now let's talk about the one that you seem to be serious about. Yes, sir. Thank you. In looking at the complaint and the First Amendment complaint and the transcripts that were attached and those are all in the appendix. I'm puzzled why we should consider the transcripts. I mean, the rule generally is that you consider documents that are attached to the complaint that where the authenticity of them is undisputed and they're relied upon in the complaint. Well, the defendant is claiming that there is whited out language on that transcript. And so that transcript's reliability, accuracy is called into question. And if it's called into question, why should we rely on that? Well, my answer to you, Your Honor, is first of all they rely on it as well. Well, they rely on a different document than the one that you have attached to your complaint. Judge Holmes, to try to address that, I have to say I don't know where that document came from, the document they used. Of course, I understand what it was represented to me to be a different version of the same document with words written in. I'm not sure who wrote the words. They appear to be in different handwriting. I don't think it changes . . . the words that are written in I don't believe changes the substance of what happened or the allegations in the complaint. I think that they claim that there are certain words that they rely upon that are not in the transcript version that you have. I mean, as it relates to whether there was a grabbing or not? I believe the grabbing was within the . . . whether there was grabbing, I think that that was in the original that we provided to the Court. But if we do look at just the face of the complaint . . . Which the district court did, isn't that correct? I don't see the district court making any reference at all to the transcript in its order. I believe there was one portion of the court's order where he did rely . . . In fact, the court took the version of the facts that were on the face of your complaint. Well, on page 9 of the court's order, the court wrote, Further, Officer Twomey claims that she did more than touch him from behind and that he only grabbed her wrist and pushed her back after he saw her left hand on his gun, citing to the memorandum in support. And I believe that that was not included in the face of the complaint. I don't . . . But that was taken from the memorandum that the defendant submitted in support of their motion to dismiss. But that wasn't part of the court's . . . the facts the court relied upon in making its decision, was it? I believe it is. But you could . . . I mean, I don't think the court had to use that to arrive at its decision. I think that's fair. But I would go to what something the court did rely on in reaching its decision. And in the very first paragraph of its decision, it says that from the complaint, the plaintiff stated that immediately afterward, Officer Twomey told Walker he thought the plaintiff had touched his back, but was unsure of exactly what she had done. Well, part of that's true. He did tell . . . Twomey did tell Walker, his supervisor, that he thought the plaintiff had touched his back but was unsure of exactly what she had done. But he didn't tell him that immediately after. That's not in the complaint. That's something the court put in there as if it was in the complaint, and it was not. And if you go through what's alleged in the complaint just itself, I submit that we've stated a probable cause of action under this court's precedent in Wilkins, Deloach, Wilford, Pierce, where this court has said if an officer inserts false information into a probable cause affidavit, that is a due process violation. If we look at what . . . and it's hard for me not to refer to this because it does . . . it's a document that was incorporated into the complaint, and I would submit that the documents at pages 56 through 66 of the appendix, which is the version that the defendants filed in support of their motion, I don't think the handwriting changes anything, but if we just go through the timing, you can really see the evolution of fabrication. The video starts at 12 . . . or the audio starts at 12.58, three minutes later, and apparently three minutes after Ms. Bailey had went behind the officer because she was scared for her safety. She said, he can't come back now, right? And then about the same time, Officer Tomey said, I'm trying to get my supervisor here, so if you have any complaints about what I just did, you can . . . and then it cuts off. That doesn't appear to be an officer who felt like he'd been interfered with. It certainly doesn't appear to be an officer who felt like someone was trying to grab his gun. She said, no, I'm just . . . I tried to come behind you. I didn't know what else to do. And the officer says, well, he's not going to do anything more. He still understands that she's scared and he's protecting her. She says, don't get away from me to her husband. And then Officer Walker walks in. At this point, there's been no discussion about her grabbing him, about her hand on his gun, about anything to do with his gun or anything else. And then she said five minutes after the incident, I was just trying to get behind your legs and stuff. And he said, I understand that. That's not the words of an officer who believed that he was being interfered with. This is an objective standard, right? Yes, sir. So what he thinks, who cares what he thinks? Why is that relevant to anything? Well, I think it's relevant if he . . . it is relevant if he is the one that's the alleged victim complaining that my client interfered with him by grabbing, intentionally trying to disarm him is eventually what he came up with at the suggestion of his partner. But it's an objective test. I'm confused. What's your point? My point is I understand the court concluded that he had a right to arrest her based on the interference statute. I think that's a factual question. And I understand it's an objective . . . Well, the court relied on arguable probable cause, basically. Arguable, exactly. Well, if we take out . . . Why was that error? I don't think it's error. I mean, that is this court's standard. Arguable probable cause is the standard. But the way the court went about it to disregard the fact that he went from saying . . . and I understand I'm talking about the subjective part of it but I'll connect this. He went from saying he didn't know if she'd done anything to taking his partner's suggestion 17 minutes later. I would guess she tried to disarm you, you know? What do I really want to charge her with, said Twomey? Interference. Just charge her with interference. And then towards the end, 18 minutes after the incident, it's safer to at least arrest her and do a PC affidavit saying she grabbed your gun. And Officer Twomey, grab my gun. Cool. If in fact the law is that if there were probable cause for an offense, okay, and as it relates to unlawful detention, if there were in fact probable cause for a defense, the fact that these officers did this conduct that no one I would not defend and I think should be condemned, the fact that they did that, why is that relevant? I mean, if there is a misdemeanor offense of interference that using the court's . . . the court used the facts of your complaint. Paragraph 20 came from your complaint. And the First Amendment complaint. And the court uses the language of your complaint in talking about what went on. If . . . which is, you know, a version that I think was not the version that the defendant wants to rely upon, but if . . . which talks about brushing on the back and that sort of thing. If that equals misdemeanor interference, why isn't all the rest of this white noise? Why does it even matter? Well, I would suggest that it doesn't support a charge of interference. If you take out the lie about grabbing the gun . . . And the district court did take out the lie. And I'm going to go through the rest of it. If you take out the lie and you say, now we're left with, I don't know what she did. She may have touched my back. And that's it. He didn't say how she attempted to interfere. He didn't say what she did to interfere. I don't believe it meets the interference statute at all. I understand the court concluded it did, but I think as a matter of fact, you take what his probable cause affidavit says and take out intentionally trying to disarm. And I don't think you reach the level of interference. Well, see, that's not really the question that we're asking. The question is whether it would be arguable that that would meet the standard. And if what you're talking about is an officer who was charged with watching that guy. He's watching the . . . I forgot whether he was a husband or a boyfriend. He's watching that guy. And somebody goes behind his back. He may not know what they're doing, but he knows they touched him. And if they touched him, why isn't that enough? Particularly since Wyoming law doesn't require any contact at all. You can have misdemeanor interference just by talking to somebody and distracting them from doing their duty. I agree. But I believe the affidavit supporting that arrest would say what happened to interfere. How the defendant interfered. Distracted him and made him turn around and hit her. But he didn't say that. Why does what he says matter? If the fact is somebody comes up behind an officer. These are the objective facts. Somebody comes up behind an officer as planned. Brushes, touches. Even if you include the fact the officer doesn't know what happened, what you have is him taking his eye off the person he was supposed to be watching. I understand your point, Judge Holmes. And I respectfully disagree. I believe that the courts... Let me ask you this. Is your excessive force claim stand-alone? In other words, can we rule against you on that point and still find in your state that your complaint states the cause of action of excessive force? I believe the arrest itself is excessive force. If there's not probable cause for the arrest, it's our view that making the arrest constitutes excessive force, not knocking her to the ground. We're not here complaining about him knocking her to the ground. You're not making it stand-alone. That's not the primary point of the argument. The primary point of the argument is this officer lied in an affidavit about what happened. I understand that. But I'm just saying, I thought your argument was even if it is a proper arrest, there was excessive force in slamming my client to the floor. I do believe that that's argued in the brief, and I just don't... So you're walking away from that? Let's be clear what you're doing. Well, no, I'm not walking away from it. I don't think it's our strongest argument. Could you answer my question? Is that a stand-alone claim? The excessive force itself? I believe it could be a stand-alone claim, yes, Your Honor. You didn't file a reply brief, and so we don't have the benefit of your response to the fact that many of these arguments were not made in the district court. The arguments that are in your opening brief, at least as alleged by the other side, were not present at all. And I looked at your document below, and you're talking about a lot of stuff now you didn't talk about before. Well, I believe the cases that we relied upon below and the cases that the court relied upon in determining whether or not fabricated evidence can lead to a Fourth Amendment violation, that was all considered in the court below. And we cited Wilkins and Wolford and the other cases concerning that standard. I'm talking about excessive force and I'm talking about your argument related to the unlawful detention. In both cases, as it relates to excessive force, you relied upon Graham, period, full stop. I would like to reserve the rest of my time, if I may. Thank you. Is that okay with you? No answer? All right. May it please the court? Counsel? My name is Adrian Kowalski, and I represent Officers Twomey and Walker in this appeal. I would like to begin by addressing the transcript situation. We agree with the plaintiff. We do not believe that has any material impact in the analysis that requires affirmation of the lower court's decision to dismiss all the claims pursuant to qualified immunity. And is that the same as saying that we can disregard the transcript? No, Your Honor. I would not go that far. I would argue that the transcript attached to the complaint is central to many of the claims within the complaint and should be considered. Well, you submitted your own transcript. Are you saying that you accept the version of the transcript that is attached to their complaint? I would say that the consideration of either transcript would not have a material impact on the analysis. I didn't understand what you said. Would you repeat that, please? Of course. I apologize. I'm a little bit nervous. That's all right. So I would say that it doesn't matter which version of the transcript you consider. The outcome is still the same. Qualified immunity bars any claim made against both officers. But that wasn't the question. No. Yes. That isn't the question. I mean, when we look at how we're going to frame the statement of facts in this case, it seems to me that the facts that are being relied upon on the face of the complaint certainly are not necessarily the facts that are in the transcript. And you thought it was important enough to attach a different version of the transcript to your document, your motion to dismiss, which suggests that you thought that there was something wrong with their version. And in your brief, you said you thought there was something wrong with their version, right? Yes, Your Honor. We believe that the original transcript was not complete. Well, it's not complete. Well, then there's a dispute as to the contents of the transcript. Under what law could we ever take your version of the transcript for a motion to dismiss? It seems to me the question is whether we take theirs or not. It's not whether we take yours. I agree, Your Honor. And in this case, I would say we should go with their transcript. Okay. So you think they're, okay, fine. So you're fine with taking their version of the transcript. In that regard, though, that you don't, the district court didn't rely upon their transcript, did it? It appears that they did, as plaintiff pointed out. The language that the plaintiff pointed to, the district court cited a paragraph 20 of the First Amendment complaint. And that's exactly what's in paragraph 20 of the First Amendment complaint. Then I believe that the lower court did not rely on the transcript and solely on the complaint, which fails to state a claim. But just, I'll move off this, but the bottom line is if we were to consider the transcript that is attached to their complaint, you think that that would be an appropriate thing to do? For the purposes of this appeal and for the motion to dismiss, yes. Okay. Thanks. So I'm going to start with the wrongful arrest claim and discuss why arguable probable cause existed to arrest Ms. Bailey for interference with a peace officer. So the relevant statute is Wyoming 65-204A. And Wyoming case law has held that words enough alone are enough to constitute interference. And specifically where it exposed an officer to the possibility of assault because he turned away from a dangerous suspect or a dangerous individual. Let's get this in context so I can understand it. A woman calls and says, excuse me, not a woman calls, but the husband calls and says, hey, we've got a divorce going and I want to make sure we don't have a hassle. Yes. And even more so there was an assault the day previously. All right. So police show up under that context. The wife says, gee, I was afraid. So I went back. I didn't want to be anywhere near my ex or ex soon to be or whatever you call this guy. Is that what happened? Yes. But I would also add that officer told me at this point was by himself and he was there was no other officers around. So if we agree with you that the vicarious liability ruling is okay on that issue. What about the unlawful detention and the excessive force claims? Do they go to or do we look at them independently? I would say that the misdemeanor goes towards the Graham test for the excessive force claim, but doesn't dictate the outcome of the excessive force claim on its own. But I would argue that element two of the Graham test also is heavily in our favor, particularly because as other courts have acknowledged that domestic situations such as the one here are wrought with potential danger. And again, I would point out that he was by himself and that he was required to turn away from the husband. He wasn't sure what was going to happen. No, no, no. I understand all of that. But I mean, they spotted you that. What about the level of force that was used? So from the complaint, it appears that he did a palm strike to knock her down after he saw her wrist on the gun. And that is from the transcript, not from the complaint. But it appears that he saw her wrist on his gun and that he wasn't sure what she grabbed, but she did grab something, according to him, throughout the transcript. There was maybe some confusion at first as to precisely what happened. But I do believe that from the transcript is pretty clear the officer told me was aware that something, that he was in some sort of danger. And I would add on to that by pointing out that he did say on the transcript that he thought that she grabbed either the gun or his baton. On our transcript at page 57. Which we're not looking at, right? Then if you look at their transcript, it says either his gun or his ass. You're saying it should have been ASP, the baton, basically, I think is what I understood. Is that the correction that would have been made on your transcript? That is correct, Judge Mortz. But, yes. So I would believe that the level of force used here was commensurate with what was a split-second situation where he wasn't sure what was going on and where he needed to make sure that the situation was secure as fast as possible. And the third element doesn't really appear to apply here directly, but at least for the first element, this court held in Starrett v. City of Lander that a misdemeanor does weigh in favor of the use of force in the first element of the Graham test. I would also point out that this court held in Johnson v. Pierre, I don't know if I'm pronouncing it right, but I'm trying, that it is important to look to analogous case law to determine whether or not an officer violated the Fourth Amendment. So it's not just the Graham test alone. Courts typically look to factually analogous cases for guidance on how to rule in these sort of situations where an officer is forced to make a split-second judgment really in a situation that's tense and uncertain and really rapidly evolving. One of the things that I think is important to get a handle on in these qualified immunity cases is what the facts are that we're dealing with. Now, in trying to reconcile, what would you do with the fact that in paragraph 18 it says, plaintiff was afraid of her husband would stand behind Twomey and while doing so brushed or touched Twomey's back or his belt. Beyond that, what Twomey thought she was doing, thought she was grabbing his gun or grabbing his ass, is that relevant at all? I would argue that it's relevant to the Graham test for the excessive force claim to determine what is going through his head in the use of force. Determining whether he thought she was resisting or not? No, whether or not she posed an immediate threat. Because I believe that the analysis would be a little different if it was a brush on the back as opposed to a grab at him. But if you have a fact that says, this is what she did that's the fact of the complaint. The transcript says this is what I thought she was doing. It seems to me the fact of what she did as pled in the complaint is going to be the fact that matters. Because what he thought is subjective, right? I would point the case to Stonecipher v. Vallis and it specifically states that what matters for arguable probable cause is the officer's perception. As in the individual officer's perception? Yes, because even if mistaken, I would believe that the mistake would be reasonable in the situation. We're not here on summary judgment, right? That is correct. The only question, as Judge Holmes has properly noted over and over again, is what's in the complaint? And whether the exhibit that is purported to be attached to the complaint can be properly referred to as one of the factual elements of the complaint. Correct? That is correct. So the court analyzed the complaint and said objectively this was a first claim was appropriate and I'm going to rule in favor of the defendant. That is correct. Now I know I'm playing the same old harp but can you hear it? Yes, I can. It's beautiful music. Thank you. You've got a great imagination young man. So the only question is does the complaint assert enough facts to justify keeping your, not your, but the excessive force claim and the unlawful detention claims extant so that they can go back for trial or for further proceedings on summary judgment? Yes, I understand what you and Judge Holmes are getting at. What deficiency is there in the complaint within the four corners of the complaint that require us to throw the plaintiff out of court? I believe that the complaint closely follows much of the transcript and the main differences between the transcript and the complaint. But that's not relevant, right? No. What deficiency is there in the pleading that is requiring us to dismiss the complaint at this stage? The complaint alleges that Officer Toomey was still by himself and inexperienced.  And I would say that the allegations of the complaint still fail to state a claim against Officer Toomey on either excessive force or on the false arrest. And I would argue because, again, it alleges that he was in this situation fraught of danger. He felt a breast on his back. Even if it was advertent, it doesn't matter what he thought. It mostly mattered what he perceived. Right. Under Stone-Saraffer versus Vallis. So I'm going to take the wife and slam her on the floor, and then I'll hold her for what he claims, she claims, is an unreasonable amount of time. Why isn't this an unreasonable amount of time? I believe she was in jail because she could not pay bail, and that is from the complaint itself. And I do not believe that she was held in detention right after this incident happened. I don't know if it is clear from the complaint or not, and I am not a hundred percent sure, so I do apologize for that. But it appears that he walked out of the house or that he spoke to his supervisor and did not detain her, and then afterwards arrested her after he confirmed that there was this probable cause to arrest her for this misdemeanor. In other words, you're free to go, but oops, I just talked to my fellow officer. You're not free to go. You rely on the Stone-Saraffer case, and I'm looking at your brief. You rely on it in the arguable probable cause context, right? Yes. So it really doesn't relate to excessive force. Even under Graham too, it's not going to be relevant there, is it? No, it is not. No, I apologize for the confusion. And back to your point, Your Honor. The complaint specifically says on, I believe, page 34, at paragraph 27, Dr. Twomey was inexperienced. He wasn't sure what exactly happened. He never said that he did anything illegal. He just said, I'm not going to arrest you. I don't apologize, but you're out of time. Yes, thank you, Your Honor. And I think you had about a minute remaining. And I, because I only have a minute, I'll just make this very brief point. I think if we take the arrest completely out of this equation, but let's say she appears for, she's given a summons to appear for court, and when she appears for court, the court says she's going to have to post a $5,000 bond to be released. And she ends up spending the next four months in jail because of this lie. I don't think it changes the unlawful detention or wrongful arrest at all, because we still have the law that was clearly established in the 1980s in this circuit that an officer who falsifies evidence in order to have someone stand charged with a crime, a felony crime for which she could have went to prison, is a violation of her due process. It doesn't change the equation, but if there's probable cause, it doesn't change that either, right? There's probable cause to detain her for, if there is, for a misdemeanor interference, then that's it. I think that you could be right, but I also believe you have to take a look at this case in the context of what she stood trial for. I'm out of time, though. I appreciate your questions. Thank you. The case is submitted. Counsel are excused. The court is in recess until 9 o'clock tomorrow morning.